FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 30, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JONATHAN MOODY, an individual, and KIRSTEN JONES, an individual,

Plaintiffs,

vs.

GRANT COUNTY, et. al.,

Defendants.

No. 2:25-CV-00022-MKD

ORDER DENYING DEFENDANT AK9'S 12(b)(6) MOTION TO DISMISS AND MOTION FOR SANCTIONS

**ECF Nos. 54, 61**

Before the Court is AK9's 12(b)(6) Motion to Dismiss, ECF No. 54, and its related Rule 11 Motion for Sanctions, ECF No. 61. The Court has considered the motions and is fully informed. For the reasons discussed below, the Court denies both motions.

## BACKGROUND

### A. Factual History

The parties are familiar with the facts of this case. Relevant here is that on August 19, 2022, witnesses reported seeing Plaintiff Jonathan Moody carrying

firearms in the parking lot of the Gorge Amphitheater. ECF No. 42 at 7-11. In response to those reports, event security guards, later determined to be employees of AK9, detained Mr. Moody until Grant County Sheriff Deputies arrived and placed Mr. Moody under arrest.[1] ECF No. 42 at 11. Plaintiffs allege AK9 is liable for assault and battery; false arrest and false imprisonment; and negligent supervision and training. ECF No. 42 at 22.

### B. Procedural History

On August 19, 2024, Plaintiffs filed a complaint in the Grant County Superior Court, alleging several tort claims against Defendants Live Nation and "DOES I through X."[2] ECF No. 60-1 at 5-6. Importantly, this complaint described the unnamed "DOES" as "business entities and/or individuals that provided private security … at the Columbia Gorge Amphitheater." *Id.* at 6. Plaintiffs then filed a separate action against the Grant County Sheriff's

---

[1] Moody's sister, Kirsten Jones, had her car impounded for 48 hours as a result of Moody's arrest. She joins in cause of action six, alleging trespass to chattels. ECF No. 42 at 21.

[2] The action against Live Nation was filed under cause number 24-2-01053-13. ECF No. 60-1 at 2.

Department and several of its employees on October 11, 2024.[3] ECF No. 3-3 at 6. As this second action was solely against the Grant County Sheriff's Department and its employees, the unnamed "DOES" were described as "employees of the Grant County Sheriff's Department." ECF No. 3-3 at 8.

At some point, the two actions—one against Live Nation, and one against Grant County—were consolidated.[4] *See* ECF No. 1 (notice of removal lists both Grant County and Live Nation as defendants).

Once removed to this Court, Plaintiffs amended their complaint on March 3, 2025, and again on August 10, 2025. ECF No. 12; ECF No. 19. Both amended complaints listed "DOES I through X" as defendants and described them as agents

---

[3] The action against Grant County Sheriff's Department was filed under cause number 24-2-01255-13. ECF No. 3-3 at 6.

[4] In their response to this motion, Plaintiffs contend their Third Amended Complaint explained "that the second amended complaint consolidated the complaints against Grant County and its law enforcement officers with the complaint against Live Nation Worldwide, Inc." But the Third Amended Complaint makes no mention of any consolidation. *See* ECF No. 19. The Second Amended Complaint does list both the Grant County Defendants and the Live Nation Defendant. ECF No. 12 at 1.

of "*either*" Live Nation or Grant County. *Id.* (emphasis added). Plaintiffs allege they were made aware of AK9's identity when former-Defendant Starplex Corporation filed its initial disclosures on November 14, 2025. ECF No. 55 at 11. Finally, on May 7, 2026, Plaintiffs filed their Fourth Amended Complaint, which named AK9 as the defendant that employed the security guards who initially detained Mr. Moody. ECF No. 42 at 10.

On July 17, 2026, Defendant AK9 moved to dismiss, ECF No. 54, and moved for sanctions on August 21, 2026, ECF No. 61. The parties' dispute whether Plaintiffs' August 19, 2024, complaint identified the unnamed defendants with sufficient particularity to toll the statute of limitations until AK9 was named in the Fourth Amended Complaint. ECF No. 54 at 8; ECF No. 55 at 13-14.

## LEGAL STANDARDS

### A. 12(b)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A 12(b)(6) motion will be denied if the plaintiff alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Id.* In considering a motion to dismiss for failure to state a claim, the Court must accept as true the well-pleaded factual allegations and any reasonable inference to be drawn from them, but legal conclusions are not entitled to the same assumption of truth. *Id.* A complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory. *Twombly*, 550 U.S. at 562. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Hunyh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). Additionally, a complaint can only be dismissed via 12(b)(6) motion on statute of limitations grounds when "it appears beyond doubt that the plaintiff can prove *no set of facts* that would establish the timeliness of the claim." *Id.* (emphasis added) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)). "A motion to dismiss for expiration of the statute of limitations may be granted over a plaintiff's tolling argument only where it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Huntington v. Smoke*

*City for Less LLC*, 2024 WL 1890279, at *3 (E.D. Wash. Apr. 30, 2024) (citation modified).

"Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it 'is not generally amenable to resolution on a Rule 12(b)(6) motion.'" *Supermail Cargo*, 68 F.3d at 1206 (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993)).

**B. Tolling Claims Against Unnamed Defendants**

Under the *Erie* Doctrine, a statute of limitations is considered substantive law and therefore the Court applies the forum state's statute of limitations when sitting in diversity jurisdiction. *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945). A state's tolling rules are part of the statute of limitations and "district courts must apply whatever tolling provisions are recognized under state law." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 528 (9th Cir. 2011).

Washington's statute of limitations for assault and battery and false imprisonment is two years. RCW 4.16.100. The statute of limitations for negligent supervision and training is three years. RCW 4.16.080(2); *Mayer v. Huesner*, 107 P.3d 152, 156 (Wash. Ct. App. 2005). "Under RCW 4.16.170, service of process on one defendant tolls the statute of limitations as to unserved defendants." *Powers v. W.B. Mobile Servs., Inc.*, 339 P.3d 173, 176 (Wash. 2014) (citing *Sidis v. Brodie/Dohrmann, Inc.*, 815 P.2d 781 (Wash. 1991)). Where

service of process against one defendant is accomplished, a plaintiff can toll the statute of limitations with respect to an unserved, unnamed defendant by identifying that defendant with "reasonable particularity." *Id.* A plaintiff can establish "reasonable particularity" by showing:

> (1)(a) from the commencement of the statute of limitations, the plaintiff made a diligent effort to identify the actual defendant given the information reasonably available to the plaintiff and
>
> > (b) the plaintiff provided information about the unnamed defendant in the complaint to the greatest extent possible, including describing the unnamed defendant's acts and appearance and
>
> (2) the defendant had or should have received such notice of the action that it will not be prejudiced in maintaining a defense on the merits at the time when the placeholder for the defendant, such as "John Doe" or "ABC Corporation," is replaced with the defendant's actual name.

*Id.* In *Powers*, the Washington Supreme Court held language in a complaint describing the unnamed defendant as "the builder of the handicap access ramp where the incident occurred," identified the subcontractor who built the ramp with sufficient reasonable particularity to toll the statute of limitations. *Id.* at 177.

**DISCUSSION**

Considering the relevant 12(b)(6) standard together with Washington's rules on tolling the statute of limitations, AK9 must prove that no set of facts exist under which Plaintiffs could satisfy the *Powers* "reasonable particularity" test. *Von*

*Saher*, 592 F.3d at 969; *Powers*, 339 P.3d at 176; *Huntington*, 2024 WL 1890279, at *4.

To begin, AK9 fails to address prongs (1)(a) and (2) of the *Powers* test entirely. ECF 54 at n.3. Therefore, AK9 has not met its burden of proving no set of facts exist that would show Plaintiffs "made a diligent effort to identify the actual defendant…." *Powers*, 339 P.3d at 176. Nor has AK9 met its burden of proving no set of facts exist that would show the lack of prejudice under prong (2). *Id.*

AK9 does, however, address prong 1(b) of the *Powers* test, arguing Plaintiffs did not provide information about AK9 to the greatest extent possible. ECF No. 54 at 9. AK9 cites to the description of the unnamed "Doe" defendants contained in the Plaintiffs' state court complaint against the Grant County defendants—not the complaint against Live Nation defendants. ECF 54 at 9. According to AK9, Plaintiffs described the unnamed defendants as "employees and/or agents of Grant County Sheriff's Department and acting within the scope of their employment." *Id.* Based on this description, AK9 contends, the Plaintiffs failed the *Powers* "reasonable particularity" test. *Id.*

However, AK9's own declaration in support of this motion, ECF No. 60, betrays this argument. The first exhibit attached to this declaration is Plaintiffs' August 19, 2024, state court complaint against Live Nation. ECF No. 60-1 at 5.

As mentioned above, the description of the John Doe defendants in this complaint is different than the description in the complaint against the Grant County defendants. In the Live Nation complaint, Plaintiffs listed the unnamed defendants as follows: "DOES I through X were business entities and/or individuals that provided private security nominally to protect licensees and invitees to the musical entertainment performances at the Columbia Gorge amphitheater. DOES I through X were agents of LIVE ENTERTAINMENT[5] INC…" ECF No. 60-1 at 6. Plaintiffs' complaint further described the actions of these unnamed Does in its statement of facts:

> As plaintiff JONATHAN MOODY was walking … he observed two people that were security officers and were working for defendant LIVE ENTERTAINMENT INC., (individuals noted as part of Defendant parties DOES I through X) yelling at him "Don't move! Don't move!" The two security officers, or two DOES I and II [sic] then physically grabbed JONATHAN MOODY and detained him until Sheriff's Deputies took custody of him. The two security guards that are employed by, or agents of defendant LIVE ENTERTAINMENT INC. (two of the DOES I through X) then yelled at the three law enforcement officers of the Grant County Sheriff's Department that they had detained the then suspect, plaintiff JONATHAN MOODY.

[5] The original complaint incorrectly named the defendant "Live Entertainment;" Plaintiffs corrected it to Live Nation in subsequent amended complaints. *See, e.g.*, ECF No. 19 at 4.

ECF No. 60-1 at 8. This description is substantially different than the one cited by AK9. And it is fatal to AK9's argument because it shows that Plaintiffs potentially satisfied prong 1(b) of the *Powers* test, by "describing the unnamed defendant's acts and appearances." *Powers*, 339 P.3d at 176. On a Rule 12(6)(b) motion, Plaintiffs do not need to affirmatively prove their initial complaint identified AK9 with reasonable particularity. *Huntington*, 2024 WL 1890279, at *4. Instead, AK9 bears the burden of proving no set of facts exist that would establish Plaintiff's satisfaction of the reasonable particularity standard. *Id.*

On this record, there exists a conceivable set of facts that may indicate Plaintiffs' compliance with the *Powers* test. Therefore, the motion to dismiss is denied.

## MOTION FOR SANCTIONS

After filing its motion to dismiss, AK9 moved for sanctions under Rule 11(b). ECF No. 61. AK9's motion for sanctions relies on the same premise as the motion to dismiss—that Plaintiffs' claims against AK9 were untimely. ECF No. 61 at 5-6. Because the claims were untimely, AK9 argues, they are frivolous under Fed. R. Civ. P. 11(b). *Id.* Because AK9 has not established that Plaintiffs' claims are untimely, Plaintiffs' claims are not necessarily frivolous. The motion for sanctions is thus denied.

Accordingly, **IT IS ORDERED:**

1. Defendant AK9's 12(b)(6) Motion to Dismiss for Failure to State a Claim **ECF No. 54** is **DENIED.**

2. Defendant AK9's 11(b) Motion for Sanctions, **ECF No. 61** is **DENIED.**

**IT IS SO ORDERED.** The District Court Executive is directed to file this order and provide copies to counsel.

DATED September 30, 2026.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE